UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WIDAD BALYOS,

    Plaintiff,                                  Civil Action No. 18-10026

v.                                          HON.  THOMAS L. LUDINGTON
                                              U.S. District Judge
                                              HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Widad Balyos ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be GRANTED and Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

# I. PROCEDURAL HISTORY

On July 14, 2015, Plaintiff filed an application for SSI, alleging disability as of November 1, 2012 (Tr. 119).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on January 24, 2017 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 36).  Plaintiff, represented by attorney Randall Mansour, testified (Tr. 40-57), as did  Vocational Expert ("VE") Pauline McEachin (Tr. 57-60).  On March 31, 2017, ALJ  Scallen found that Plaintiff was not disabled (Tr. 11-19).  On November 15, 1917, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed for judicial review of the final decision on January 3, 2018.

# II. BACKGROUND FACTS

Plaintiff, born May 2, 1968, was 48 when the ALJ issued his decision (Tr. 19, 119). She completed two years of college but never worked (Tr. 144-145).  In her application for benefits, she alleged disability due to depression, anxiety, panic attacks, back problems, migraines, and Carpal Tunnel Syndrome ("CTS") (Tr. 144).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset date to July 14, 2015* (Tr. 39).

Plaintiff then offered the following testimony.

She came to the U.S. from Iraq in 2015 (Tr. 40).  While living in Iraq, she was diagnosed with breast cancer and had a partial mastectomy followed by radiation (Tr. 41).

She also had a history of psychiatric problems, noting that in 1994, she underwent electric shock treatment (Tr. 41). She tried to commit suicide three times after undergoing a "personal" trauma (Tr. 42). Plaintiff noted that after the first Gulf War, she was threaten by telephone by two men (Tr. 49). She continued to fear that they would cause problems for her (Tr. 49). She continued to receive psychiatric treatment after coming to the U.S. (Tr. 42). The prescribed psychotropic medication caused stomach problems (Tr. 42).

She currently lived with her brother and mother (Tr. 43). She was unable to work due to dizziness, the medication side effect of sleepiness, and the need to urinate every 15 minutes (Tr. 43). She lived in fear of people watching her and taking pictures of her (Tr. 44). She spent most of the day reclining and was in a constant state of anxiety (Tr. 45, 50).

Plaintiff also experienced long-term mid to lower back pain but had been told by doctors that her claims were not supported by the objective studies (Tr. 46). On a scale of 1 to 10, she experienced level "6" pain (Tr. 47). She was unable to lift more than a little over two pounds (Tr. 51). She was unable to stand for more than one hour before needing to lie down (Tr. 51). She was unable to perform postural activities and experienced shoulder pain (Tr. 52). She required help in showering because she experienced panic attacks when showering by herself (Tr. 52-53). She did not drive, perform housework, or leave the house (Tr. 53). She spent her time watching news channels on satellite television and watching televised religious services (Tr. 53). She was unable to follow the plot of a television show but received comfort from hearing religious music (Tr. 54). She had been prescribed a

urinary catheter for help passing fluids four times daily (Tr. 55).

In response to questioning by her attorney, she stated that she did not do household chores due to physical pain (Tr. 56).

### B. Medical Evidence

#### 1. Treating Sources

In August, 2013, Dr. Mohammed Al-Uaidi composed a letter on Plaintiff's behalf, noting that she had been under his treatment for several years and suffered from schizophrenia (Tr. 209).

May, 2015 treatment records by oncologist Samir Alsawah, M.D. note Plaintiff's report that she currently felt "fine" (Tr. 213). She reported fatigue but denied other symptoms (Tr. 214). She exhibited a normal mood (Tr. 215, 323). The same month, Nabeel Toma, M.D. noted a depressed mood (Tr. 228, 318-319). June, 2015 psychotherapy intake records note that Plaintiff and her mother both attributed their diagnoses of schizophrenia to her father's emotional abuse (Tr. 210, 239). She exhibited a normal appearance, affect, behavior, and thought content but a poor recent memory and distractability (Tr. 210). She appeared anxious (Tr. 211). She denied hallucinations (Tr. 211).

July, 2015 records by Dr. Toma note Plaintiff's report of indigestion but no other significant problems (Tr. 224). July, 2015 mental health records note that Plaintiff continued to grieve a long-ended romance (Tr. 242). She requested a higher dosage of psychotropic medication (Tr. 244). She exhibited a normal appearance (Tr. 244). August, 2015 oncology

records note a normal mood and "no hallucinations" (Tr. 327, 344). September, 2015 mental health records note that she continued to fear "two guys" that she talked to on the telephone over a decade earlier (Tr. 249). Physical treating records from the same month note Plaintiff's report of back pain (Tr. 312). October, 2015 oncology records note no recurrence of cancer (Tr. 329). Dr. Alsawah noted that Plaintiff was positive for arthralgia but was negative for other symptoms (Tr. 332). December, 2015 records note a normal thought content and good judgment and insight (Tr. 251). Plaintiff reported good sleep, no voices, and a feeling of calmness (Tr. 251). Her condition was deemed "moderately" improved (Tr. 252).

In December, 2015, Dr. Toma completed a physical assessment of Plaintiff's condition, noting a "guarded" prognosis due to diagnoses of breast cancer and depression (Tr. 234). He noted that Plaintiff experienced fatigue, dizziness, and pain (Tr. 234). He found that Plaintiff's physical pain was exacerbated by depression (Tr. 235). He found that Plaintiff's tendency to go "off task" precluded all work and that she was incapable of even low stress jobs (Tr. 235). He limited her to walking one block, and standing and sitting for a total one hour over the course of a work day (Tr. 235). He found that Plaintiff would be required to walk every 10 minutes for a total of 10 minutes (Tr. 236). He found that Plaintiff was limited to lifting less than 10 pounds, turning her head, twisting, and stooping to a rare basis and was precluded from all climbing of ladders and crouching (Tr. 236-237). He opined that Plaintiff would be expected to miss more than four days of work each month (Tr.

237).

In January, 2016, Plaintiff sought treatment for dry eye syndrome (Tr. 265). She reported an improvement in the eye condition in March, 2016 (Tr. 267). Plaintiff exhibited an appropriate mood and affect (Tr. 267). Mental health records note full orientation and a normal affect (Tr. 378). The same month, Plaintiff reported urinating more than eight times in a 24-hour period (Tr. 293). Imaging studies of the kidneys showed moderate left-sided hydronephrosis but otherwise unremarkable findings (Tr. 295). May, 2016 mental health records note good insight, judgment, memory, and concentration (Tr. 255, 386). She reported renewed paranoia, stating that she feared "cameras at home" (Tr. 256). Oncology records state that she felt "okay" but experienced "diffuse bone pain" of the back, arms, and legs, generalized fatigue, and chronic back pain (Tr. 339). The following month, she reported depression and that "someone did a surgery and put something in [her] brain to hear [her] thoughts" (Tr. 259, 396). The same records note that Plaintiff's condition was "progressing" (Tr. 259).

June, 2016 urology records note a diagnosis of hydronephrosis secondary to bladder outlet obstruction (Tr. 282, 286, 348, 367). Treating records from June and August, 2016 note no back pain, dizziness, or confusion (Tr. 297, 348). She appeared fully oriented with a normal mood (Tr. 297, 304). A July, 2016 mammogram showed no recurrence of cancer (Tr. 368). Mental health records from the same month note an appropriate affect, mood, appearance, dress, insight, and judgment (Tr. 402). She was deemed mildly improved from

the previous visit (Tr. 403). August, 2016 mental health records note that recent feelings of being choked were subsiding (Tr. 407, 409). Her counselor noted that she presented "several themes of delusions and hallucination" (Tr. 407). Later the same month, Plaintiff reported an improvement in mood with deep breathing exercises (Tr. 409). September, 2016 mental health records note good insight, judgment, affect and memory (Tr. 411). November, 2016 mental health treating records note mild improvements in her condition since the last session (Tr. 419).

### 2. Non-Treating Sources

In June, 2015, psychiatrist M. Dibai, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of a diagnosis of breast cancer in 2012 and ongoing depression and anxiety (Tr. 219). She reported that she slept 12 hours a night, ate well, and had a good appetite (Tr. 219). She reported longstanding panic attacks (Tr. 219). She reported that she got along with her family and friends and denied having disputes with others (Tr. 220).

Dr. Dibai noted a "pleasant demeanor" and that Plaintiff was "expressive and interactive" (Tr. 220). Plaintiff reported that she took a shower every day, and changed her clothes and performed laundry chores every other day (Tr. 220). Dr. Dibai observed a steady gait and an anxious mood and that Plaintiff was not interested in working (Tr. 220). She denied hallucinations, paranoia, or suicidal/homicidal ideation or plans (Tr. 220-221). She appeared fully oriented with impaired immediate memory (Tr. 221). Dr. Dibai concluded

that Plaintiff appeared to be in "a state of culture shock" and experienced independent anxiety due to the former diagnosis of breast cancer (Tr. 222). He noted no psychotic symptoms (Tr. 222).

In September, 2015, Twaide Langham, D.O. reviewed the treating and consultative records, finding that Plaintiff was not disabled as a result of either physical or mental conditions (Tr. 69-71).

### C.    Vocational Expert Testimony

The ALJ posed following set of restrictions to VE Pauline McEachin, taking into account Plaintiff's age, education, and (lack of) work history:

> [M]edium [exertional] level,[1] frequent climbing of stairs, ladders and ramps, occasional climbing of ropes and scaffolds. Also limited to frequent balancing, stooping, kneeling, crouching and crawling. Also limited to simple routine repetitive tasks. Tasks which require little judgment can be learned in a very short period of time. Furthermore, limited to low stress environment meaning no more change in the work place in terms of work procedures, work responsibilities. Also limited to no interaction with the public and also only incidental interaction with coworkers mean not working as a team member or working in tandem with other coworkers. With just those limitations alone are there any jobs in the competitive job market? (Tr. 57-58).

Based on the above restrictions, the VE testified that the hypothetical individual could

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

perform the unskilled, medium positions of kitchen helper (180,000) positions in the national economy); packager (150,000); and assembler (200,000) (Tr. 58). She testified further that a preclusion on climbing ropes, ladders and scaffolds; avoiding all unprotected heights; and working with moving machinery would not change the job findings or numbers (Tr. 58). She testified that if the above-described individual were limited to exertionally light work, she could perform the jobs of light assembler (120,000); hand packager (130,000); and inspector (180,000) (Tr. 59). The VE testified that the need to speak English was not required in any of the above-cited jobs (Tr. 59). She found that the individual could also perform the sedentary work of an inspector (130,000); bench assembler (150,000); and packager (140,000) (Tr. 59). The VE testified that the need to be off task for 20 percent or more of the workday (aside from regularly scheduled breaks) or, the need to miss more than one day of work each month would preclude all unskilled work (Tr. 59-60).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the severe impairments of "history of left breast cancer in 2012 with partial mastectomy and chemotherapy in Iraq; degenerative disc disease and Schmorl's node type activity² in the

---

² 

Schmorl's node is described as "[a]n upward and downward protrusion (pushing into) of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae.https://www.medicinenet.com/script/main/art.asp?articlekey=14007. (Last visited January 29, 2019). Schmorl's nodes "are common, especially with minor degeneration of the aging spine" and "are most common in the middle and lower spine." *Id.* "Schmorl's nodes usually cause no symptoms, but they reflect that 'wear and tear' of the spine has occurred over time." *Id.*

lower thoracic and lumbar spine, most pronounced at L5-S1; Vitamin D deficiency; mild hydronephrosis and schizophrenia," but that none of the impairments met or equaled a listed impairment found in 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ found that the conditions of "mild arthritis of right sterno clavicular joint, right shoulder and bilateral patella" were non-severe (Tr. 13). The ALJ found that Plaintiff experienced mild limitation in understanding, remembering, or applying information and moderate limitation in interacting with others and in concentration, persistence, and maintaining pace (Tr. 14). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally medium work with the following additional limitations:

> [Frequent climbing of stairs and ramps; occasional climbing of ropes, ladders and scaffolds; frequent balancing, stooping, kneeling, crouching and crawling; simple, routine and repetitive tasks; tasks that require little judgment and can be learned in a very short period of time; work in a low stress environment meaning minimal changes in the work place, work procedures and work responsibilities; no interaction with the public and only incidental interaction with coworkers meaning no tandem or team work (Tr. 14).

Citing the VE's findings, the ALJ found that Plaintiff could perform the medium, unskilled work of a kitchen helper, hand packer, and assembler (Tr. 18, 58).

The ALJ acknowledged that Plaintiff experienced some degree of physical and psychological limitation but noted that she was able to perform laundry chores and take care of her own personal needs (Tr. 16). He noted that the breast cancer was in remission and that Plaintiff reported in 2015 that she felt "fine" (Tr. 16). He accorded Dr. Toma's December, 2015 "disability" opinion "little weight" (Tr. 16). As to the psychological limitations, he

noted that the treating records were "relatively good" showing good judgment, insight, and memory (Tr. 17).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 2 29, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

In her sole argument for remand, Plaintiff contends that the RFC in the administrative opinion does not account for her full degree of psychological limitation.[3] *Plaintiff's Brief,* 10-12, *Docket #12,* Pg ID 470. She contends that contrary to the requirements of SSR 96-8p, the ALJ failed to consider whether she could perform unskilled work on a "regular and

---

[3]Plaintiff's brief does not dispute the RFC as to her physical abilities.

-12-

continuing basis." *Id.* at 11. She contends, in effect, that because the VE's job testimony was given in response to a hypothetical question (identical to the RFC in the administrative opinion) that did not include all of her relevant mental limitations, the Commissioner has not met her burden at Step Five. *Id.*

It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley v. Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987); *Teverbaugh v. Commissioner of Social Security,* 820 F.Supp.2d 702, 706 (E.D. Mich. 2003) (Roberts, J.)(reversible error for ALJ to rely upon unsupported job findings in making a Step Five determination). However, as discussed below, the ALJ's adoption of some of Plaintiff's allegations of limitation but rejection of others in crafting the question to the VE and the RFC found in the administrative opinion is supported by substantial evidence and well articulated. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC).

Plaintiff's claim that the ALJ did not consider whether she could perform work on a "continuing" basis in crafting either the question to the VE or the RFC is contradicted by the record. A "'regular and continuing basis'" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p 1996 WL 374184 at *2. (July 2, 1996). The VE testified that her job findings referred to eight-hour a day, full-time work consistent

with SSR 96-8p. (Tr. 59-60).

The ALJ otherwise complied with the requirements of SSR 96-8p in finding that the psychological symptoms were limiting but not disabling.[4] He acknowledged that Plaintiff required a limitation to unskilled work, requiring little judgment that could be learned in a short period; low stress work with "minimal changes" in work place, procedures, or responsibilities; no interaction with the public; and incidental interaction with coworkers (Tr. 14-15). In support of his conclusion that Plaintiff's psychological limitations did not preclude all work, he cited multiple treating records showing normal concentration, judgment, insight, memory, and affect (Tr. 17). He noted that by Plaintiff's own account, she obtained good results from counseling, deep breathing exercises, and journaling (Tr. 17). The ALJ provided adequate reasons for rejecting Dr. Al-Uaidl's June, 2015, one-time

---

[4]

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at *7. The analysis must include the alleged psychological and physical limitations. 20 C.F.R. § 416.945. In crafting the RFC, the ALJ must consider how the psychological limitations affect the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p at *6. However, "'[a]lthough a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v.CSS*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4, 2002)(citing *Bencivengo v. CSS*, 251 F.3d 153, slip op., 4 (Table)(3rd Cir. December 19, 2000)(punctuation added)). " '[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (*citing Bencivengo* at slip op. at 5).

impression that Plaintiff was unable to work, noting that the record as a whole failed to support the finding that Plaintiff lacked the ability to perform full-time work unskilled work (Tr. 17).

The ALJ's findings are consistent with my own review of the record. July, 2015 records by Dr. Toma note a report of indigestion but no other problems (Tr. 224). Counseling records from the same month note that she grieved a failed romance (Tr. 242). However, December, 2015 counseling records note good insight, thought content, judgment and the denial of hallucinations (Tr. 251). While the 2016 counseling records appear to reflect traumas during her past life in Iraq and tensions inherent in living with other adult relatives, her treating source reported that she exhibited good judgment, memory, concentration, and insight (Tr. 255, 386). Plaintiff's testimony that she felt panic and choking while taking a shower appears to have been largely resolved with the use of deep breathing and other centering exercises (Tr. 52-53, 407, 409).

Because the ALJ's rationale for finding that Plaintiff's psychological limitations did not preclude all work is well supported and explained, a remand is not warranted.

In closing, I note that my recommendation to uphold the administrative findings should not be interpreted to wholly discount Plaintiff's claims of physical and psychological limitations. However, because the ALJ's determination is supported by substantial evidence and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be GRANTED and Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 31, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen